**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **CHILD A., by next friend PARENTS A,** | <u>**VERIFIED COMPLAINT**</u> |
| **CHILD B., by next friend PARENTS B,** | |
| **CHILD C., by next friend PARENT C,** | |
| **CHILD D., by next friend PARENTS D,** | **FILE NO: 5:20-cv-10363** |
| | |
| **Plaintiffs,** | **JUDGE** |
| | |
| **-vs-** | |

**SALINE AREA SCHOOLS;
SALINE AREA SCHOOLS BOARD OF
EDUCATION;
SCOT GRADEN, individually and in his official
capacity as Superintendent of Saline Area Schools;
STEVE LAATSCH, individually and in his official
capacity as Assistant-Superintendent of Saline
Area Schools;
DAVID RAFT, individually and in his official
capacity as Principal of Saline High School;
JOE PALKA, individually and in his official
capacity as Assistant-Principal of Saline High
School;
THERESA STAGER, individually and in her
official capacity as Assistant-Principal of Saline
High School;
MOLLY GARCIA, individually and in her
Official capacity as Director of Student Services;
KIRK EVENSON, individually and in his official
capacity as Assistant-Principal of Saline High
School, Jointly and Severally,**

**Defendants.**

_____/

**KALLMAN LEGAL GROUP, PLLC:
David A. Kallman              (P34200)
Stephen P. Kallman           (P75622)
Attorneys for Plaintiffs
5600 W. Mount Hope Hwy.
Lansing, MI  48917
(517) 322-3207**

_KALLMAN LEGAL GROUP, PLLC_

KALLMAN LEGAL GROUP, PLLC

**NOW COME** the above-named Plaintiffs, by and through their undersigned counsel, and together bring this Verified Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.      "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397 (1989). "Speech may not be banned on the ground that it expresses ideas that offend." *Metal v. Tam*, 137 S.Ct. 1744, 1751 (2017).

2.      A foundational core of our Constitutional Republic is that the State cannot punish its citizens for engaging in speech that is protected by the First Amendment. Just as citizens cannot be criminally punished for protected speech, a public school cannot discipline speech that falls within the ambit of the First Amendment.

3.      This case arises because of a private Snap Chat snap chat group text that occurred on January 26, 2020 (Sunday) between numerous children who were all friends and acquaintances. The snap chat did not occur on school grounds or campus, with school property, at a school sponsored event or field trip, nor was it connected to any functions of the school in any way.

4.      Despite the children sending these text messages from their homes, with their privately owned phones, on a non-school day, Defendants acted outside the scope of their authority and violated Plaintiffs' rights by suspending all four of them and recommending the expulsion of two of them for the expression contained in the text messages.

5.      The messages in the snap chat were inappropriate and immature. It was the parents, however, who had the right to discipline their children, not the government authorities employed

2

by the school.

6.    This case seeks to protect and vindicate statutory and fundamental constitutional rights. Plaintiffs bring a civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendants' acts, policies, practices, customs, and procedures, which deprived Plaintiffs of their rights.

7.    As set forth in this Complaint, the actions, policies, practices, customs, and procedures of Defendants were the cause of, and the moving force behind, the statutory and constitutional violations in this case.

8.    Plaintiffs bring this action not only for money damages, but also for these express purposes:

A.    for a declaration that the acts of Defendants were unconstitutional and violate clearly established laws;

B.    for a complete expungement of any reference to a suspension, expulsion, and any events related to those actions, from Plaintiffs' transcript and complete student records and file;

C.    for changes to the policies and procedures of the School District so that no other students are punished for engaging in non-school related and off-campus free speech; and

D.    for an award of Plaintiffs' reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and other applicable law.

KALLMAN LEGAL GROUP, PLLC

## JURISDICTION AND VENUE

9.      This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Honorable Court pursuant to 28 U.S.C. § 1331 and 1343, and 42 U.S.C. § 1983, 1985, 1986, and 1988, and other Federal and State laws and regulations, to redress violations of federal statutes and state law.

10.     This Honorable Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(1), (2), (3), and (4). Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 2202.

11.     This Honorable Court has supplemental jurisdiction regarding the remaining state claims pursuant to 28 U.S.C. § 1367 because the state claims arise out of the same nexus of facts and events.

12.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28  U.S.C. § 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Honorable Court. Plaintiffs' claims for damages are authorized under 42 U.S.C. § 1983, 42 U.S.C. § 2000d-7, and by the general legal and equitable powers of this Honorable Court.

13.     Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to Plaintiffs' claims occurred in Washtenaw County, Michigan.

## PLAINTIFFS

14.     Child A is a student at Saline High School, a United States citizen, and a resident in Washtenaw County, Michigan.

15.     Child A is represented by his/her next friend, Parents A, for all purposes relating to this action and are United States citizen and residents in Washtenaw County, Michigan.

KALLMAN LEGAL GROUP, PLLC

16.     Child B is a student at Saline High School and is a United States citizen and resident in Washtenaw County, Michigan.

17.     Child B is represented by his/her next friend, Parents B, for all purposes relating to this action and are United States citizens and residents in Washtenaw County, Michigan.

18.     Child C is a student at Saline High School, a United States citizen, and a resident in Washtenaw County, Michigan.

19.     Child C is represented by his/her next friend, Parent C, for all purposes relating to this action and is a United States citizen and a resident in Washtenaw County, Michigan.

20.     Child D is a student at Saline High School, a United States citizen, and a resident in Washtenaw County, Michigan.

21.     Child D is represented by his/her next friend, Parents D, for all purposes relating to this action and are United States citizens and residents in Washtenaw County, Michigan.

22.     All Plaintiff children are minors and respectfully request to appoint their parents as next friend for the proposes of this action. Further, Plaintiffs request that this Honorable Court grant the attached Motion for Protective Order to permit the use of pseudonyms.

### DEFENDANTS

23.     Defendant Saline Area Schools is a public-school system within Washtenaw County, Michigan and is the governmental body responsible for operating the Saline High School. Saline Area Schools operates under the laws of the State of Michigan. Saline Area Schools office is located at 7265 North Ann Arbor Street, Saline, Michigan 48176.

24.     Defendant Saline Area Schools Board of Education is the body responsible for managing the Saline Area School District and for adopting, implementing, and enforcing all school policies and the student code of conduct.

25.     Defendant Scot Graden is the Superintendent of Saline Area Schools, is a resident of Michigan, and is a defendant in his individual and official capacities.

26.     Defendant Steve Laatsch is the Assistant-Superintendent of Saline Area Schools, is a resident of Michigan, and is a defendant in his individual and official capacities.

27.     Defendant David Raft is the Principal of Saline High School, is a resident of Michigan, and is a defendant in his individual and official capacities.

28.     Defendant Joe Palka is an Assistant-Principal of Saline High School, is a resident of Michigan, and is a defendant in his individual and official capacities.

29.     Defendant Theresa Stager is an Assistant-Principal of Saline High School, is a resident of Michigan, and is a defendant in her individual and official capacities.

30.     Defendant Molly Garcia is the Director of Student Services of Saline High School, is a resident of Michigan, and is a defendant in her individual and official capacities.

31.     Defendant Kirk Evenson is an Assistant-Principal of Saline High School, is a resident of Michigan, and is a defendant in his individual and official capacities.

## STATEMENT OF FACTS

32.     All four children are successful students at the high school and none have ever been disciplined, suspended, or expelled by the school prior to the incident leading to this complaint.

33.     On Sunday evening, January 26, 2020, a private snap chat group was formed by two other minor children who are close friends. One child was African-American and one was Caucasian. Eventually Defendants disciplined the Caucasian child, but he is not a party to this action.

34.     Children A, B, C, and D, who are all Caucasian, were later added to the snap chat group.

35.     Other students were also added to the snap chat group, including both African-

6

American and Caucasian children.

36.     In the course of their conversation, many of the children, both African-American and Caucasian, used inappropriate language that included offensive terms like the "N" word and various abbreviations of that word, "white power," and "the South will rise again." There was also a longer quote from Chris Rock included that used the "N" word.

37.     In the course of their conversation, many of the children, both African-American and Caucasian, used inappropriate "memes" or pictures that included offensive terms like the "N" word and various abbreviations of that word.

38.     One of the African-American children jokingly suggested that everyone on the chat say the "N" word at the same time to stop racism and many of the children did so.

39.     While Plaintiffs do not excuse the use of such language, the intent and understood usage of these offensive terms was in the context of immature banter between friends and in a joking manner. The initial children on the snap chat understood this to be the intent.

40.     When a person leaves a snap chat group, everything that person said or posted is immediately erased, leaving only the texts or images posted by the remaining members in the group.

41.     After a number of the African-American children logged off the snap chat, another African-American child joined the group late and was therefore unable to see the prior postings by the other African-American children.

42.     The late-arriving African-American student saw the posts by the Caucasian children and recorded a video of the snap chat.

43.     This African-American child immediately publicly posted the video of the snap chat, discussed what he had seen, and used the "N" word himself, while discussing his short

involvement in the conversation.

44.     This snap chat group was a private chat visible only to the few children asked to join into the chat and the chat was not available on any public social media.

45.     None of the Plaintiffs posted or otherwise distributed any of the content of the snap chat to any public social media site, to the school, to the student body, or to any other person.

46.     There was no intent by Plaintiffs to make this private conversation public, or to cause anyone to be hurt or upset, or to take the inappropriate language out of context.

47.     One of the African-American children acknowledged this to be true in a text the next day with Child C:

> **Child C:** [Child's name] you know last night was all a misunderstanding and a joke correct?
>
> **African-American Child:** Yea ik [i know] it got outta control but on some level we can't f*** around like that like at all.

48.     Both African-American and Caucasian children on the snap chat also sent each other offensive memes, some of which included the "N" word.

49.     The screen shots taken by the late-arriving African-American child did not show the entire conversation that occurred between all the participants because large portions of the discussion had been erased when the other African-American students logged off the chat.

50.     The entirety of the chat occurred in private, did not occur at any Saline Area School location, at any school event, while traveling to or from a school event, or on any technology, web site or equipment owned by the school.

51.     On January 27, 2020, despite Defendants only having a small portion of the snap chat conversation, approximately 10 hours after snap chat occurred and with virtually no

KALLMAN LEGAL GROUP, PLLC

investigation, Defendants made a grossly negligent decision to verbally suspend all the Plaintiff children and barred them from attending Saline High School indefinitely.

52.     None of the African-American students who participated in the snap chat conversation were disciplined by Defendants.

53.     None of the Plaintiffs, nor their parents, received any written notice of their suspensions, the grounds for the suspensions, or any advisement of their rights to a hearing or other due process prior to being suspended.

54.     At the initiation of Defendants, Child B was questioned by a police officer on January 27, 2020, without any notification to his parents and without any notice of his legal rights or the fact that he was under a criminal investigation.

55.     In a letter distributed publicly, and to the entire Saline school community less than 24 hours after the snap chat, Defendant Superintendent Scot Graden and other school officials rushed to judgment and labelled all the Plaintiff children as racists, and falsely stated the Plaintiff children were guilty of "an act of racism that created harm to all of our students, especially students of color. Hate, prejudice, and racism have no place in our schools or our community." The letter further stated, "we strongly denounce the actions and words of these students." Further, Defendant Graden subsequently conducted numerous media interviews, conducted meetings, and made further statements regarding the off-school conversation.

56.     Defendants further alienated and stigmatized the Plaintiff children from their classmates and the school community by publicly stating, "The District will continue working to ensure that our schools provide a safe and inviting environment void of these types of despicable words and actions."

57.     All four Plaintiff children remained suspended through February 7, 2020, without

any hearing or sufficient notice of specific charges against them.

58.     Late Friday afternoon on February 7th, Plaintiffs received written communications from the Defendant school district with specific allegations of claimed violations of the school code of conduct and their right to a hearing.

59.     Children A and B were suspended for 10 days and have been notified that they can return to school on Monday, February 10, 2020.

60.     Children C and D are still currently suspended and have been notified of the school's recommendation for expulsion and given notice of their right to appeal this recommendation.

61.     Plaintiff children have suffered academically as they have been unable to attend school, attend their class lectures, or otherwise fully participate in their education.

62.     Plaintiff children have been banned from all school extra-curricular activities, including, but not limited to, sports teams, clubs, and school events.

## GENERAL ALLEGATIONS

### SCHOOL POLICIES

63.     Defendants derive their authority to adopt and enforce school policies and a student code of conduct pursuant to MCL 380.11a.

64.     MCL 380.11a(3)(b) states that Defendants only have the authority to adopt and enforce policies and a student code of conduct that provides "for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity."

65.     Nothing in MCL 380.11a(3)(b) grants any authority to Defendants to police or punish speech or expression that does not occur "at school or a school sponsored activity or while en route to or from school or a school sponsored activity." Therefore, Defendants' improper

KALLMAN LEGAL GROUP, PLLC

expansion of their policy to include speech that does not occur "at school" is unlawful.

66.    Defendants' Anti-Harassment Policy (po5517) states in the very first paragraph: "This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board."

67.    As none of snap chats occurred on school property or at any activity sponsored by the school board, the Anti-Harassment Policy did not provide Defendants with any authority to act in this case.

68.    The Michigan Legislature enacted the Matt Epling Safe School Law (MCL 380.1310b) which is an anti-bullying law that codified the authority for schools to handle bullying situations and the statute required that all school districts adopt anti-bullying policies. The law clearly limited the authority of schools to regulate bullying as it only prohibited bullying "at school." MCL 380.1310b(1).

69.    The statute defines "at school" to mean "in a classroom, elsewhere on school premises, on a school bus or other school-related vehicle, or at a school-sponsored activity or event whether or not it is held on school premises. 'At school' includes conduct using a telecommunications access device or telecommunications service provider that occurs off school premises if the telecommunications access device or the telecommunications service provider is owned by or under the control of the school district or public-school academy." MCL 380.1310b(10)(a).

70.    Defendants adopted an Anti-Bullying policy (po5517.01) as required by statute and the school denotes at the end of its policy that its authority to adopt such a policy comes from the Matt Epling Safe School Law.

71.    Despite the clear statutory limitation that the Matt Epling Safe School Law only

KALLMAN LEGAL GROUP, PLLC

applies to conduct "at school," the School District acted outside its authority and violated state law by unlawfully expanding its policy to include "[m]isconduct occurring outside of school may also be disciplined if it interferes with the school environment." See po5517.01.

72.     Nothing in the Matt Epling Safe School Law grants any authority to Defendants to police or punish speech or expression that does not occur "at school."

73.     Defendants Interrogation of Students policy (po5540) requires that "[b]efore the student(s) is (are) questioned as a witness to or suspect in an alleged violation of law, the building administrator shall attempt to contact the parent prior to questioning and shall remain in the room during the questioning unless compelling reasons for exclusion are provided by the law enforcement agency."

74.     Defendants violated this policy by questioning Plaintiffs prior to attempting to contact their parents.

75.     Defendants' Student Code of Conduct clearly states that it only applies to the following circumstances where "students [are]:

    A.     traveling to and from school,

    B.     at school,

    C.     on school property,

    D.     at school sponsored events, and

    E.     on school transportation including any off campus events that may affect the school environment."

76.     It is undisputed that the snap chat occurred on a Sunday evening and did not happen while Plaintiffs were traveling to and from school, at school, on school property, at school sponsored events, or at any school off campus events.

KALLMAN LEGAL GROUP, PLLC

77.    Therefore, Defendants Student Code of Conduct cannot apply to the snap chat that occurred.

**DEFENDANTS CAUSED NEARLY ALL OF THE IMPACT ON THE SCHOOL ENVIRONMENT**

78.    After Plaintiffs had been suspended the morning after the snap chat which occurred on January 26, 2020, Defendant Graden sent out a public letter to everyone in the Saline Area School community on January 27, 2020, and posted it on the school's public website.[1] He made the entire school community and the public aware of "offensive and inappropriate racist comments," labeled the snap chat as an "act of racism," and stated that "[h]ate, prejudice, and racism have no place in our schools or community." He further falsely stated that what occurred required "clear discipline for infraction of school rules." Further, Defendant Graden subsequently conducted numerous media interviews, conducted meetings, and made further public statements regarding the off-school conversation.

79.    Prior to Defendant Graden's initial public message, there were no media reports regarding the snap chat.

80.    Nearly every initial media report regarding the snap chat referenced Defendant Graden's January 27, 2020 public letter.

81.    Teachers at Saline High School used class-time to bring up the snap chat and to condemn the Plaintiff children who were involved in the snap chat, including advocating that they be criminally prosecuted and expelled from school.

82.    Defendants contacted the local police to pursue criminal charges against Plaintiffs.

83.    Defendants contacted the F.B.I. to pursue federal criminal charges against Plaintiffs.

---

[1] https://www.salineschools.org/downloads/district_files/sas.statement.1.27.20.pdf

KALLMAN LEGAL GROUP, PLLC

## COUNT I – FIRST AMENDMENT VIOLATIONS
### 42 U.S.C § 1983
### AGAINST ALL DEFENDANTS

84.     Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 83 above as if fully restated herein.

85.     Plaintiffs' out-of-school, off-campus speech is protected by the First Amendment to the United States Constitution, and it is protected by Article I, Section 5 of the Michigan Constitution.

86.     While Plaintiffs' speech was immature and inappropriate, none of Plaintiffs' speech amounted to a true threat, it was not reasonably calculated to reach the school environment, nor did it pose a serious safety risk to the school.

87.     Any disruption that occurred in the school environment was the result of the Defendants' overreaction to Plaintiffs' speech and their violation of Plaintiffs' constitutional rights, rather than the speech itself.

88.     Defendants did not have a constitutionally justified reason, nor legal authority, to discipline Plaintiffs because of their private, non-school related speech.

89.     Defendants are "persons" under 42 U.S.C § 1983.

90.     Defendants acted intentionally and under the color of state law, which violated Plaintiffs' clearly established constitutional rights by illegally punishing them for their protected speech. This constitutes a violation pursuant to 42 U.S.C § 1983.

91.     Defendants acted with reckless, wanton, or callous indifference to Plaintiffs' protected constitutional rights.

92.     Defendants violated Plaintiffs' rights by suspending and/or recommending expulsion from school because of their speech.

93.     Defendants' policies and/or procedures described above are in direct conflict with Plaintiffs' First Amendment rights and are a custom, pattern, and practice of Defendants in violation of 42 U.S.C § 1983.

94.     Defendants' policies and procedures operate to force all students to curtail their speech and expression in a manner prohibited by the First Amendment.

95.     Defendants failed to properly train, hire, and/or supervise its school officials regarding the proper policies, procedures, and limitations on student discipline, including the need to protect a student's First Amendment rights.

96.     Defendants' failure to properly hire, train, and/or supervise its school officials was a moving force behind the constitutional violations alleged herein and was a direct and proximate cause of Plaintiffs' injuries.

97.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have suffered mental anguish, damage to their reputation, and suffered adverse consequences socially, educationally, and vocationally in an amount to be proven at trial.

98.     Defendants' actions violated Plaintiffs' clearly-established rights and were objectively unreasonable.

99.     Punitive damages are available against the individual Defendants and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

100.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees pursuant to 42 U.S.C. § 1988.

101.    Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further violations of their First Amendment rights.

102.    Plaintiffs are entitled to injunctive relief ordering their immediate return to school, to resume all school activities, and to be permitted to make up any academic schoolwork missed because of the improper suspensions.

### COUNT II – FOURTEENTH AMENDMENT VIOLATIONS
### 42 U.S.C § 1983
### AGAINST ALL DEFENDANTS

103.    Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 102 above as if fully restated herein.

104.    Education is a fundamental right and a property interest protected by the Fourteenth Amendment to the United States Constitution. Plaintiffs have a constitutionally cognizable property interest in, and a fundamental right to, an education under *Goss v. Lopez*, 419 U.S. 565, 574 (1975), and Article VIII, Section 2 of the Michigan Constitution.

105.    At a minimum, due process requires that any deprivation of property by adjudication be preceded by notice and a meaningful opportunity to be heard appropriate to the nature of the case.

106.    All Plaintiffs were suspended the morning after the snap chat, prior to a full investigation being completed, prior to notifying the parents, prior to providing the families a proper opportunity to be heard, and prior to establishing that Defendants had any authority to act.

107.    All Plaintiffs were deprived of any meaningful opportunity to contest the suspension, prior to it being enforced.

108.    Plaintiffs were not given any notice as to how the private snap chat allegedly violated any school policies until after Plaintiffs had been suspended for one week.

109.    After one week of suspension, Defendants sent letters to Plaintiffs erroneously stating that the children had been suspended for violating the Anti-Harassment policy (po5517)

KALLMAN LEGAL GROUP, PLLC

despite the policy unequivocally stating that it only regulated conduct occurring "on school property."

110.    Child B and his counsel met with Defendant Laatsch and the school's attorneys on February 4, 2020. Child B gave notice to Defendants that they were acting outside the scope of their authority and requested that all Plaintiffs be fully reinstated in school. Defendants refused.

111.    Later that week, Defendants consented to Child A and Child B returning to school after two weeks of suspension if they completed a class on racism. Child A and Child B completed the class and returned to school on February 10, 2020.

112.    Defendants gave notice late Friday afternoon, February 7, 2020, that expulsion proceedings for Child C and Child D had begun. To date, Child C and Child D remain suspended indefinitely.

113.    Upon information and belief, a partial record of what occurred in the snap chat and Defendants' response to it have been placed in Plaintiffs' permanent school record, transcript, and file.

114.    Defendants acted outside the scope of their authority, disciplined Plaintiffs for speech not occurring on school property, did not follow their own policies and procedures, violated MCL 380.11a(3)(b), and thereby deprived Plaintiffs of their due process rights and violated 42 U.S.C § 1983.

115.    Defendants further violated Plaintiffs' due process rights by enforcing the inapplicable Student Code of Conduct and suspending Plaintiffs for engaging in a private snap chat, which is not covered by the Code of Conduct and thus Defendants' acted outside the scope of their authority.

116.    Defendants failed to properly train, hire, and/or supervise its school officials regarding the proper policies, procedures, and limitations on student discipline, including the need to protect a student's Due Process rights.

117.    Defendants' failure to properly hire, train, and/or supervise its school officials was a moving force behind the constitutional violations alleged herein and was a direct and proximate cause of Plaintiffs' injuries.

118.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have suffered mental anguish, damage to their reputation, and suffered adverse consequences socially, educationally, and vocationally in an amount to be proven at trial.

119.    Defendants' actions violated Plaintiffs' clearly-established rights and were objectively unreasonable.

120.    Punitive damages are available against the individual Defendants and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

121.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees pursuant to 42 U.S.C. § 1988.

122.    Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further violations of their Due Process rights.

123.    Plaintiffs are entitled to injunctive relief ordering their immediate return to school, to resume all school activities, and to be permitted to make up any academic schoolwork missed because of the improper suspensions.

**COUNT III – THE SCHOOL DISTRICT VIOLATED THE MATT EPLING SAFE SCHOOL LAW**
**(MCL 380.1310b)**
**AGAINST ALL DEFENDANTS**

124.    Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 123 above as if fully restated herein.

125.    Defendants and its School Board are responsible for creating, adopting, approving, ratifying, and enforcing the bullying policies, practices, customs and procedures as set forth in this Complaint.

126.    As outlined above, the Matt Epling Safe School Law only permits schools to address bullying incidents that occur "at school." MCL 380.1310b(1).

127.    Defendants acted outside of the scope of their authority by applying the Matt Epling Safe School Law for a snap chat which occurred over the weekend and was not "at school."

128.    Nothing in the Matt Epling Safe School Law or MCL 380.11a(3) grants any authority to Defendants to police or punish speech or expression that does not occur "at school." Therefore, Defendants' improper expansion of their policy to include speech that does not occur "at school" is unlawful.

129.    Defendants' actions violated Plaintiffs' clearly-established rights and were objectively unreasonable.

130.    As a direct and proximate result of the School District's statutory violations, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, entitling them to declaratory and injunctive relief.

131.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have suffered mental anguish, damage to their reputation, and suffered adverse consequences socially, educationally, and vocationally in an amount to be proven at trial.

132.    Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further

violations of their statutory rights.

133.    Plaintiffs are entitled to injunctive relief ordering their immediate return to school, to resume all school activities, and to be permitted to make up any academic schoolwork missed because of the improper suspensions.

**COUNT IV - MICHIGAN CONSTITUTIONAL VIOLATIONS
AGAINST ALL DEFENDANTS**

134.    Plaintiffs hereby incorporate by reference paragraphs 1 through 133 as if fully restated herein.

135.    By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their rights under Michigan's Constitution of 1963 as follows:

A.    **Article I, § 5 Freedom of speech**. Defendants' enforcement of the above-mentioned policies for all the reasons as stated above denied Plaintiffs and students at the School District the right to "freely speak, write, express and publish his views on all subjects" and restrain or abridge their liberty of speech. In particular, Defendants actions violated Plaintiffs free speech rights as they disciplined the students for an incident which did not occur at school, or at any school related function or activity.

B.    **Article VIII, § 2 Free public elementary and secondary schools; discrimination**. Defendants, for all the reasons as stated above, deprived Plaintiffs of their right to participate in Michigan's "system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin."

136.    The School District's training, supervision, policies, practices, customs, and procedures, punished and imposed discipline on Plaintiffs for expression Defendants found to be

KALLMAN LEGAL GROUP, PLLC

offensive. Defendants' actions injured Plaintiffs by infringing on their free speech and due process rights through their discipline, suspension, and/or expulsion of Plaintiffs and for failure to comply with its own policies and MCL 380.11a(3)(b).

137.    As a direct and proximate result of Defendants' violation of the state constitutional provisions specified above, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

138.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have suffered mental anguish, damage to their reputation, and suffered adverse consequences socially, educationally, and vocationally in an amount to be proven at trial.

139.    Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further violations of their state constitutional rights.

140.    Defendants' actions violated Plaintiffs' clearly-established rights and were objectively unreasonable.

141.    Plaintiffs are entitled to injunctive relief ordering their immediate return to school, to resume all school activities, and to be permitted to make up any academic schoolwork missed because of the improper suspensions.

### COUNT V - CONSTITUTIONAL VAGUENESS VIOLATIONS
### (First and Fourteenth Amendments; 42 U.S.C. § 1983)
### AGAINST ALL DEFENDANTS

142.    Plaintiffs hereby incorporate by reference paragraphs 1 through 141 as if fully restated herein.

143.    The Due Process clauses of the United States Constitution and the Michigan Constitution require that the law provide predictability for all citizens. U.S. Const., Am. 14; Mich.

Const. 1963, Article 1, §17.

144.    An unambiguously drafted school policy affords prior notice to the parents and students of conduct proscribed.

145.    A fundamental principle of due process, embodied in the right to prior notice, is that a policy is void for vagueness where its prohibitions are not clearly defined.

146.    Defendants' policies must give an ordinary parent and student notice of what is prohibited, so that a person may act within the confines of the policy.

147.    If a parent or student has to guess at what a policy means, or if the policy is not clearly defined, then the policy is void for vagueness.

148.    Defendants' Anti-Bullying policy (po5517.01) is void for vagueness and invalid because of its overbreadth.

    A.    The policy states that "[m]isconduct occurring outside of school may also be disciplined if it interferes with the school environment."

    B.    The policy provides no explanation or definition for what type or form of "misconduct" would be required in order for Defendants to invoke the policy.

    C.    The policy provides no explanation or definition for the word "interferes" and gives no indication as to what type or what level of interference is necessary to invoke the policy.

    D.    Said policy is vague and overly broad because there is no limiting principle as it could be applied to any student, at any location, for any thing, so long as the Defendants (in their sole discretion) deem the misconduct to affect the school environment.

KALLMAN LEGAL GROUP, PLLC

E.    Said policy is unconstitutional because it is so vague and overbroad that it can be arbitrarily applied to silence speech Defendants find offensive, no matter the location, venue, or audience of the speech.

149.    Defendants' Suspension and Expulsion policy (po5610) is void for vagueness and invalid because of its overbreadth.

A.    The policy states that a student may be suspended or expelled for engaging in "gross misconduct."

B.    The policy provides no definition for "gross misconduct" and does not indicate any limiting principle as to how it may be invoked. This leaves the students and parents to guess as to what may rise to the level of "gross misconduct."

C.    Such a vague and amorphous policy leads to illegal and arbitrary enforcement beyond the authority of the school, just as has already occurred in this case.

150.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have suffered mental anguish, damage to their reputation, and suffered adverse consequences socially, educationally, and vocationally in an amount to be proven at trial.

151.    Defendants' actions violated Plaintiffs' clearly-established rights and were objectively unreasonable.

152.    Punitive damages are available against the individual Defendants and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

153.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees pursuant to 42 U.S.C. § 1988.

154.    Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further violations of their constitutional rights.

155.    Plaintiffs are entitled to injunctive relief ordering their immediate return to school, to resume all school activities, and to be permitted to make up any academic schoolwork missed because of the improper suspensions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request this Honorable Court:

A.    declare that Defendants' actions in this case are unconstitutional and that Defendants violated Plaintiffs' fundamental constitutional rights;

B.    declare and make a finding that Defendants acted outside the scope of their authority;

C.    declare and make a finding that Defendants acted outside the scope of authority as stated in the Matt Epling Safe School Law;

D.    declare and make a finding that Defendants' policies are vague, overbroad, and unconstitutional for the reasons set forth above;

E.    issue preliminary and permanent injunctions immediately reinstating Plaintiffs back in school and fully expunging any record of this private incident from their complete student record, transcript, and file.

F.    award Plaintiffs compensatory and punitive damages against all Defendants;

G.    award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

H.    grant such other and further relief as is just and appropriate.

KALLMAN LEGAL GROUP, PLLC

Respectfully submitted,

**KALLMAN LEGAL GROUP, PLLC**

DATED: February 11, 2020         /s/ David A. Kallman
           By: David A. Kallman        (P34200)
           Attorney for Plaintiffs
           5600 W. Mount Hope Hwy.
           Lansing, MI 48917
           517-322-3207
           dave@kallmanlegal.com

**I HEREBY STATE AND AFFIRM THAT I HAVE HAD READ THE FOREGOING VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.**

DATED: February 11, 2020.         /s/ Parent A.
           Parent A, as next friend for Child A.

DATED: February 11, 2020.         /s/ Parent B.
           Parent B, as next friend for Child B.

DATED: February 11, 2020.         /s/ Parent C.
           Parent C, as next friend for Child C.

DATED: February 11, 2020.         /s/ Parent D.
           Parent D, as next friend for Child D.

KALLMAN LEGAL GROUP, PLLC

25