## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHILD A., by next friend PARENTS A,
CHILD B., by next friend PARENTS B,
CHILD C., by next friend PARENT C,
CHILD D., by next friend PARENTS D,

          **Plaintiffs,**

-vs-

SALINE AREA SCHOOLS;
SALINE AREA SCHOOLS BOARD OF
EDUCATION;
SCOT GRADEN, individually and in his
official capacity as Superintendent of
Saline Area Schools;
STEVE LAATSCH, individually and in
his official capacity as Assistant-
Superintendent of Saline Area Schools;
DAVID RAFT, individually and in his
Official capacity as Principal of Saline
High School;
JOE PALKA, individually and in his
official capacity as Assistant-Principal
of Saline High School;
THERESA STAGER, individually and
in her official capacity as Assistant-
Principal of Saline High School;
MOLLY GARCIA, individually and in
Her Official capacity as Director of
Student Services;
KIRK EVENSON, individually and in
his official capacity as Assistant-
Principal of Saline High School,
Jointly and Severally,

          **Defendants.**

**MEMORANDUM OF LAW FOR
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION**

**FILE NO: 5:20-cv-10363**

**DISTRICT JUDGE
HON. PAUL D. BORMAN**

**MAGISTRATE JUDGE
MICHAEL J. HLUCHANIUK**

KALLMAN LEGAL GROUP, PLLC

David A. Kallman        (P34200)
Stephen P. Kallman      (P75622)
**KALLMAN LEGAL GROUP, PLLC**
Attorneys for Plaintiffs
5600 W. Mount Hope Hwy.
Lansing, MI  48917
(517) 322-3207
dave@kallmanlegal.com

Timothy J. Mullins      (P28021)
John L. Miller          (P71913)
**GIARMARCO, MULLINS & HORTON, P.C.**
Attorneys for Defendants
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084
(248) 457-7020
tmullins@gmhlaw.com
jmiller@gmhlaw.com

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**NOW COME** the above-named Plaintiffs, by and through their undersigned counsel, and together bring this Motion for entry of a Temporary Restraining Order and Preliminary Injunction against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following:

1.      Plaintiffs hereby move, pursuant to Federal Rule of Civil Procedure 65, for entry of a Temporary Restraining Order and Preliminary Injunction to order Defendants immediately to fully reinstate all Plaintiffs back to school (including, but not limited to, all classes, school activities, sports, and extra-curricular activities) and forbidding Defendants from continuing their punishment of Plaintiffs for their out-of-school speech.

2.      Defendants suspended all four Plaintiff children from all school for a

single conversation on Snapchat—created outside of school, over the weekend, on their own time—that school officials found to be offensive.

3.     Plaintiffs hereby incorporate by reference all facts and allegations in the Verified Complaint.

4.     Plaintiffs also incorporate by reference the legal arguments contained in the Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

5.     Plaintiffs have satisfied the four-part test for granting a temporary restraining order and preliminary injunction.

6.     As set forth in the accompanying legal memorandum, Plaintiffs are likely to succeed on the merits of their claims.

7.     Plaintiffs will suffer irreparable harm unless the requested injunctive relief is granted.

8.     The government has no legally cognizable interest in suppressing the exercise of constitutional rights. Accordingly, no harm to Defendants would result from granting the requested injunctive relief.

9.     Defendants acted outside the scope of their authority by disciplining Plaintiff children for speech that occurred at home over the weekend and was not related to the school in any way.

10.     Granting the requested injunctive relief will not result in any

foreseeable, serious harm to Defendants or the public.

11.     Plaintiffs made numerous efforts to avoid litigation. Plaintiffs and their parents initiated multiple conversations with Defendants prior to the filing of this lawsuit in an attempt to resolve this matter and reinstate all of the children. Defendants refused.

12.     Plaintiffs waited to file this Motion in an attempt to give Defendants an opportunity to meet with their counsel and reconsider their position. Plaintiffs' counsel met with Defendant Graden and his counsel on Thursday, February 20, 2020 to make a final effort to have all of the children fully reinstated to school. Defendants refused.

13.     Plaintiff, through the undersigned counsel, gave notice to Defendants' counsel that this Motion for Temporary Restraining Order or Preliminary Injunction would be filed because of their continued refusal of their constitutional obligation to educate children. Defendants would not agree to the requested relief.

14.     Plaintiff requests that the Court immediately schedule a hearing and issue a temporary restraining order enjoining the District from continuing to punish Plaintiff children for their out-of-school speech.

15.     Because this is a non-commercial case and because the balance of hardships favors Plaintiffs, the security bond requirement in Federal Rule of Civil Procedure 65(c) should be waived. Further, as Plaintiffs are requesting that

Defendants simply comply with the law and their constitutional duties to educate children, Defendants are not at risk of sustaining any damages.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a Temporary Restraining Order and Preliminary Injunction to enjoin Defendant from continuing to punish Plaintiffs in violation of their rights. Specifically, Plaintiffs request the following relating to each Plaintiff child:

**Child A:**

- Child A's suspension has been lifted and he has returned to school. However, Child A has been banned from all extra-curricular activities and was kicked out of his SAT preparation class. Child A should be permitted to fully reengage with all school activities, and Defendants should be prohibited from implementing any further disciplinary action.

**Child B:**

- Child B's suspension has been lifted and he has returned to school. However, Child B has been banned from all extra-curricular activities and was removed from all sports teams, in particular, the swimming/diving team. Further, Child B's regional sporting events are on March 7, 2020, and he should be permitted to participate in those events. Child B should be permitted to fully reengage with all

school activities including sports, and Defendants should be prohibited from implementing any further disciplinary action.

**Child C:**

- Child C continues to be suspended from all school activities. He has been out of school for approximately one month. The school's next Trimester begins in March. Child C should be permitted to fully reengage with all school activities, and Defendants should be prohibited from implementing any further disciplinary action.

**Child D:**

- Child D continues to be suspended from all school activities. He has been out of school for approximately one month. The school's next Trimester begins in March. Child C should be permitted to fully reengage with all school activities, and Defendants should be prohibited from implementing any further disciplinary action.

Plaintiff further requests that the Court schedule a preliminary injunction hearing for the earliest available opportunity, but before the expiration of the temporary restraining order, if granted by this Honorable Court.

Respectfully submitted,

**KALLMAN LEGAL GROUP, PLLC**

DATED: February 24, 2020 /s/ David A. Kallman
By: David A. Kallman (P34200)
Attorney for Plaintiffs
5600 W. Mount Hope Hwy.
Lansing, MI 48917
517-322-3207
dave@kallmanlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing PLAINTIFFS' MOTION FOR

TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

and attached MEMORANDUM OF LAW was filed electronically and served on all

counsel of record via the ECF system of the United States District Court for the

Eastern District of Michigan.

DATED: February 24, 2020 /s/ David A. Kallman
David A. Kallman (P34200)
Attorney for Plaintiffs
5600 W. Mount Hope Hwy.
Lansing, MI 48917
(517) 322-3207
dave@kallmanlegal.com

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KALLMAN LEGAL GROUP, PLLC

| | |
|---|---|
| CHILD A., by next friend PARENTS A, <br> CHILD B., by next friend PARENTS B, <br> CHILD C., by next friend PARENT C, <br> CHILD D., by next friend PARENTS D, <br><br>        Plaintiffs, <br> -vs- <br> SALINE AREA SCHOOLS; <br> SALINE AREA SCHOOLS BOARD OF <br> EDUCATION; <br> SCOT GRADEN, individually and in his <br> official capacity as Superintendent of <br> Saline Area Schools; <br> STEVE LAATSCH, individually and in <br> his official capacity as Assistant- <br> Superintendent of Saline Area Schools; <br> DAVID RAFT, individually and in his <br> Official capacity as Principal of Saline <br> High School; <br> JOE PALKA, individually and in his <br> official capacity as Assistant-Principal <br> of Saline High School; <br> THERESA STAGER, individually and <br> in her official capacity as Assistant- <br> Principal of Saline High School; <br> MOLLY GARCIA, individually and in <br> Her Official capacity as Director of <br> Student Services; <br> KIRK EVENSON, individually and in <br> his official capacity as Assistant- <br> Principal of Saline High School, <br> Jointly and Severally, <br><br>        Defendants. | **MEMORANDUM OF LAW FOR** <br> **PLAINTIFFS' MOTION FOR** <br> **TEMPORARY RESTRAINING** <br> **ORDER AND PRELIMINARY** <br> **INJUNCTION** <br><br> FILE NO: 5:20-cv-10363 <br><br> DISTRICT JUDGE <br> HON. PAUL D. BORMAN <br><br> MAGISTRATE JUDGE <br> MICHAEL J. HLUCHANIUK |

David A. Kallman        (P34200)
Stephen P. Kallman      (P75622)
KALLMAN LEGAL GROUP, PLLC
Attorneys for Plaintiffs
5600 W. Mount Hope Hwy.
Lansing, MI  48917
(517) 322-3207
dave@kallmanlegal.com

Timothy J. Mullins      (P28021)
John L. Miller          (P71913)
GIARMARCO, MULLINS &
HORTON, P.C.
Attorneys for Defendants
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084
(248) 457-7020
tmullins@gmhlaw.com
jmiller@gmhlaw.com

# MEMORANDUM OF LAW FOR PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

KALLMAN LEGAL GROUP, PLLC

## TABLE OF CONTENTS

INDEX OF AUTHORITIES...................................................................... iv

INTRODUCTION ...............................................................................1

PROCEDURAL HISTORY....................................................3

STATEMENT OF FACTS ....................................................3

QUESTION PRESENTED .......................................................8

ARGUMENT ......................................................................8

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS. ................................................................9

II.  IN THE ABSENCE OF IMMEDIATE INJUNCTIVE RELIEF, PLAINTIFFS WILL SUFFER IRREPARABLE HARM..................................20

III. DEFENDANTS WILL SUFFER NO IRREPARABLE HARM BY ALLOWING PLAINTIFFS TO BE FULLY REINSTATED AT SCHOOL......21

IV. THE PUBLIC INTEREST FAVORS THE PROTECTION OF STUDENT SPEECH RIGHTS. ...........................................................21

CONCLUSION ..................................................................22

CERTIFICATE OF COMPLIANCE WITH LOCAL RULES ..............................23

KALLMAN LEGAL GROUP, PLLC

# INDEX OF AUTHORITIES

CASES:

*B.H. v. Easton Area Sch. Dist.*, 725 F.3d 293 (3d Cir. 2013)   .   .   8, 9, 22

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) .   .   .   10

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973)   .   .   .   .   18

*Council of Alternative Political Parties v. Hooks*,
121 F.3d 876 (3d Cir. 1997)   .   .   .   .   .   .   .   2, 22

*Dayton Area Visually Impaired Persons, Inc. v. Fisher*,
70 F.3d 1474 (6th Cir. 1995)   .   .   .   .   .   .   8

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*,
103 F.3d 814 (9th Cir. 1996)   .   .   .   .   .   .   17

*Elrod v. Burns*, 427 U.S. 347 (1976)   .   .   .   .   .   2, 20

*Hill v. Colorado*, 530 U.S. 703 (2000) .   .   .   .   .   17

*J.S. v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3d Cir. 2011)   .   *passim*

*Layshock v. Hermitage School Dist.*, 650 F.3d 205 (3rd Cir. 2011)   .   12

*Lowery v. Euverard*, 497 F.3d 584 (6th Cir. 2007) .   .   .   .   10

*Matal v. Tam*, 137 S. Ct. 1744 (June 19, 2017)   .   .   .   .   14

*Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984)   18

*Morse v. Frederick*, 551 U.S. 393 (2007)   .   .   .   .   .   10

*Perry Educ. Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983)   14

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth.*,
653 F.3d 290 (3d Cir. 2011)   .   .   .   .   .   .   .   1, 14

KALLMAN LEGAL GROUP, PLLC

KALLMAN LEGAL GROUP, PLLC

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) . . . . . 14

*Saxe v. State College Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) . 13, 18

*Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243 (3d Cir. 2002) 18, 21

*Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969) . *passim*

*United Food & Commercial Workers Union, Local 1099 v.*
*Southwest Ohio Reg'l Transit Auth.* 163 F.3d 341 (6th Cir. 1998) . 8, 17

**STATUTES:**

MCL 380.11a . . . . . . . . 15

MCL 380.11a(3)(b) . . . . . . . 15

MCL 380.1310b . . . . . . . . 15

MCL 380.1310b(1) . . . . . . . 16

MCL 380.1310b(10)(a) . . . . . . . 16

**COURT RULES:**

Fed. R. Civ. P. 65 . . . . . . . . 8

**INTRODUCTION**

This case arises because of a private Snapchat group text that occurred on January 26, 2020 (Sunday) between numerous children who were all friends and acquaintances. The Snapchat did not occur on school grounds or campus. The Snapchat did not occur at a school sponsored event or field trip. The Snapchat neither used school property, nor was it connected to any functions of the school in any way.

Because of the speech contained in the text messages, Defendants suspended all four Plaintiff children and recommended expulsion for two of them. In taking these actions, Defendants acted outside their authority and in violation of the children's rights. While the messages in the Snapchat were inappropriate and immature, it was the parents, however, who had the right to discipline their children, not the government authorities employed by the school.

As outlined in the Verified Complaint, all four children are successful students at the high school and none have ever been disciplined, suspended, or expelled by the school prior to this incident.

It is clear that schools lack the authority to punish students for profane or vulgar out-of-school speech. *J.S. v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 920, 925, 933 (3d Cir. 2011) (en banc). However offensive particular language might be, censorship of particular viewpoints is almost invariably unconstitutional. E.g., *Pittsburgh League of Young Voters Educ. Fund v. Port Auth.*, 653 F.3d 290, 296

1

(3rd Cir. 2011) (internal citations omitted). Further, Defendants' policies and procedures are vague, overbroad, and leave far too much discretion to decision-makers to make subjective decisions. See *J.S.*, 650 F.3d at 934–36.

All of the other requirements for preliminary relief are also met. In First Amendment cases, irreparable harm is presumed. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The continuing harm to Plaintiff children from Defendants' actions cannot be adequately remedied by damages; whereas, Defendants will suffer no harm from restoring all Plaintiff children to be able to fully participate in their education during the pendency of this litigation. The public interest favors the protection of Plaintiff children's freedom of speech. See *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997).

Plaintiffs' counsel has tried for weeks to convince Defendants to simply reinstate the children during the pendency of this litigation. Defendants' own Code of Conduct states that "[d]uring an appeal, the student will not have to serve any assigned discipline except in the case where a clear and present danger to themselves and/or others exists." As two of Plaintiff children have already resumed their basic educational activities at school without incident, there is obviously no reasonable argument that the remaining two Plaintiff children should not be permitted to continue their education as well. Moreover, all Plaintiff children should be allowed to resume all school related activities, extracurricular or otherwise.

Plaintiffs waited to file this Motion in an attempt to convince Defendants to reinstate the Plaintiff children voluntarily. Plaintiffs' counsel met with Defendant Superintendent Scot Graden and his counsel on Thursday, February 20, 2020 in pursuit of this reinstatement. Defendants refused, thus necessitating this Motion.

Plaintiffs therefore request that this Honorable Court issue a Temporary Restraining Order and Preliminary Injunction immediately restoring all Plaintiff children to their prior status at the school, be fully reinstated and permitted to participate in all school activities, and forbidding Defendants from implementing any further punishment of Plaintiff children for their out-of-school speech.

## PROCEDURAL HISTORY

This action was commenced by a Verified Complaint filed by Plaintiffs on February 11, 2020.

## STATEMENT OF FACTS

On Sunday evening, January 26, 2020, a private Snapchat group was formed by two other minor children who are close friends and not parties to this action. One child was African-American and one was Caucasian. Eventually Defendants disciplined the Caucasian child, but he is not a party to this action. Child A, B, C, and D, who are all Caucasian, were later added to the Snapchat group. Other students were also added to the Snapchat group, including both African-American and Caucasian children.

3

In the course of their conversation, many of the children, both African-American and Caucasian, used inappropriate language that included offensive terms like the "N" word and various abbreviations of that word, "white power," and "the South will rise again." There was also a longer quote from comedian Chris Rock posted in the Snapchat that used the "N" word. In the course of their conversation, many of the children, both African-American and Caucasian, used inappropriate "memes" or pictures that included offensive terms like the "N" word and various abbreviations of that word. One of the African-American children jokingly suggested that everyone on the chat say the "N" word at the same time to stop racism and many of the children did so.

While Plaintiffs do not excuse the use of such language, the intent and understood usage of these offensive terms was in the context of immature banter between friends and in a joking manner. The initial children on the Snapchat understood this to be the intent.

When a person leaves a Snapchat group, everything that person said or posted is immediately erased, leaving only the texts or images posted by the remaining members in the group. After a number of the African-American children logged off the Snapchat, another African-American child joined the group late and was therefore unable to see the prior postings by the other African-American children and the context of the original conversation. The late-arriving African-American

student saw the posts by the Caucasian children and recorded a video of the Snapchat. This African-American child immediately publicly posted the video of the Snapchat, discussed what he had seen, and used the "N" word himself, while discussing his short involvement in the conversation.

This Snapchat group was a private chat visible only to the few children asked to join into the chat, and the chat was not accessible on any public social media. None of Plaintiff children posted or otherwise distributed any of the content of the Snapchat to any public social media site, to the school, to the student body, or to any other person. There was no intent by Plaintiff children to make this private conversation public, to cause anyone to be hurt or upset, or to take the inappropriate language out of context.

One of the African-American children acknowledged this to be true in a text the next day with Child C:

> **Child C:** [Child's name] you know last night was all a misunderstanding and a joke correct?
> **African-American Child:** Yea [i know] it got outta control but on some level we can't f*** around like that like at all.

The screen shots taken by the late-arriving African-American child did not show the entire conversation that occurred between all the participants because large portions of the discussion had been erased when the other African-American students logged off the chat.

The entirety of the chat occurred in private, did not occur at any Saline Area

5

School location, at any school event, while traveling to or from a school event, or on any technology, web site, or equipment owned by the school.

On January 27, 2020, and despite Defendants only having a small portion of the Snapchat conversation (approximately 10 hours after the Snapchat occurred and with virtually no investigation), Defendants made a grossly negligent decision to verbally suspend all the Plaintiff children and barred them from attending Saline High School indefinitely. None of the African-American students who participated in the Snapchat conversation were disciplined by Defendants.

None of the Plaintiff children, nor their parents, received any written notice of their suspensions, the grounds for the suspensions, or any advisement of their rights to a hearing or other due process prior to being suspended. Defendants called the police regarding the Snapchat conversation and asked them to investigate it criminally. Child B was subsequently interrogated by a police officer on January 27, 2020, without any notification to his parents and without any notice of his legal rights or the fact that he was under a criminal investigation. In addition, Defendants inexplicably referred the Snapchat to the Federal Bureau of Investigation (FBI) for investigation for possible criminal charges. No criminal charges have been filed against Plaintiff children.

In a letter distributed publicly and to the entire Saline school community less than 24 hours after the Snapchat, Defendant Superintendent Scot Graden and other

school officials rushed to judgment in labeling all the Plaintiff children as racists, and falsely stated the Plaintiff children were guilty of "an act of racism that created harm to all of our students, especially students of color. Hate, prejudice, and racism have no place in our schools or our community."

Defendants further alienated and stigmatized the Plaintiff children from their classmates and the school community by publicly stating, "The District will continue working to ensure that our schools provide a safe and inviting environment void of these types of despicable words and actions."

All four Plaintiff children remained suspended through February 7, 2020, without any hearing or sufficient notice of specific charges against them. Late Friday afternoon on February 7th, Plaintiffs received written notice from Defendants with specific allegations of claimed violations of the school code of conduct and their right to a hearing.

Child A and B were suspended for 10 days and they returned to school on Monday, February 10, 2020. Child C and D remain suspended and have been notified of the school's recommendation for expulsion and given notice of their right to appeal this recommendation. Defendants have indicated verbally that they will withdraw the expulsion request; however, Plaintiffs have received nothing in writing to verify this withdrawal.

Plaintiff children have suffered academically as they have been unable to

attend school, attend their class lectures, or otherwise fully participate in their education. Plaintiff children have been banned from all extra-curricular activities including, but not limited to, sports teams, clubs, and school events.

## QUESTION PRESENTED

This case presents the question of whether a public school may punish a student via suspension and/or expulsion for out-of-school speech consisting of a private conversation on Snapchat that Defendants believe was offensive.

## ARGUMENT

Under Rule 65 of the Federal Rules of Civil Procedure, this Court must weigh four factors when deciding whether to grant a motion for preliminary injunction: (1) Plaintiff's likelihood of success on the merits; (2) will the movant be irreparably harmed by denial of the relief; (3) will granting preliminary relief result in even greater harm to the others or the non-moving party; and (4) is granting preliminary relief in the public interest. *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1480 (6th Cir. 1995). These factors are not prerequisites, but are factors that are to be balanced against each other. *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth*. 163 F.3d 341, 347 (6th Cir. 1998) (citation omitted).

In school speech cases, the plaintiff's likelihood of success on the merits is generally dispositive. *B.H. v. Easton Area Sch. Dist*., 725 F.3d 293, 302 (3d Cir.

2013) (en banc).

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

### A.   Defendants Cannot Punish Students for Private, Out-of-School Speech That Does Not Cause Substantial, Material Disruption to School Activities.

Students do not shed their constitutional rights to freedom of speech at the schoolhouse gate. *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506 (1969). The First Amendment limits the government's power to punish a student for his/her speech. *Id*. at 506–09. Generally, public schools may not punish in-school speech unless the speech creates a risk of substantial, material disruption to school activities—a high bar. *Id*. at 509.

It is an open question whether school officials may ever punish a student for out-of-school speech without violating the First Amendment. *J.S.*, 650 F.3d at 926 n.3; *B.H.*, 725 F.3d at 303 n.9. See also *J.S.*, 650 F.3d at 937–40 (Smith, J., concurring) (analyzing *Tinker* and its progeny and concluding that student speech doctrine does not apply to off-campus speech and that ordinary First Amendment principles apply instead).

The Sixth Circuit Court of Appeals has held:

[W]hile public schools are not run as democracies, neither are they run as Stalinist regimes. Students do have First Amendment rights, and school officials do not have unfettered authority to regulate student speech. The Supreme Court has established three frameworks for evaluating student speech: (1) vulgar and obscene speech is governed

9

by *Bethel School Dist. v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); (2) school-sponsored speech is governed by *Hazelwood v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); and (3) all other speech is governed by *Tinker*.

The parties agree that the instant case is governed by *Tinker*. Pursuant to *Tinker*, school officials may regulate speech that materially and substantially interferes "with the requirements of appropriate discipline in the operation of the school." *Tinker*, 393 U.S. at 513, 89 S.Ct. 733. However, *Tinker* does not prescribe a uniform, "one size fits all" analysis. The Court must consider the content and context of the speech, and the nature of the school's response.

*Lowery v. Euverard*, 497 F.3d 584, 588 (6th Cir. 2007).

Although the Supreme Court in *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) recognized a narrow exception to *Tinker* that allows schools to punish students for lewd speech and profanity used ***during school***, the Supreme Court has made clear that schools have no power to punish lewd or profane out-of-school speech. *Morse v. Frederick*, 551 U.S. 393, 405 (2007) (observing that "[h]ad *Fraser* delivered the same speech in a public forum outside the school context, it would have been protected."); *J.S.*, 650 F.3d at 932 (noting that "*Fraser* does not apply to off-campus speech," and holding that *Fraser* did not justify a school's punishment for "profane language outside the school, during non-school hours").

Plaintiffs' Snapchat was unquestionably out-of-school speech. It occurred on a Sunday night, was not done at school or at a school event, nor was it related to the school in any way. It is undisputed that the Snapchat was in no way "school sponsored speech;" thus, *Hazelwood* does not apply.

10

KALLMAN LEGAL GROUP, PLLC

The Snapchat had limited access and was not public. Indeed, the school was not even mentioned in the chat. As the Third Circuit explained in *J.S.,* this is not enough of a nexus to school to justify punishment. See *J.S.*, 650 F.3d at 929 (holding that an online parody profile of the principal created outside of school "could not 'reasonably have led school authorities to forecast substantial disruption of or material interference with school activities,'" despite the "unfortunate humiliation" it caused the principal) (quoting *Tinker*, 393 U.S. at 514).

Pursuant to *Lowery*, a review of the content, context, and nature of Defendants' response clearly indicates that Plaintiff children's speech was protected. The content of the speech had nothing to do with the school but was instead a group of both African-American and Caucasian children engaging in immature and inappropriate banter. The context is also incredibly important. Again, it occurred on a non-school night (Sunday), not during any school event, nor was it related to school in any way.

Finally, the nature of school's response is also important to consider. There was no substantial disruption to the school environment. Even if Defendants argue there was a disruption (which Plaintiffs do not concede), it was completely of their own making. There was no media coverage, nor was there evidence of wide-spread attention to the Snapchat until after Defendant Graden sent out an inflammatory public, school district wide, email criticizing the chat and condemning Plaintiff

11

children as "racist."[1]

No school should be permitted to manufacture its own, self-described "disruption" in order to sanction out-of-school speech that it may find offensive. Defendants cannot simultaneously issue public media statements, hold public meetings on the issue, call its own students "racist," and then complain about the "disruption" the media attention and public interest in the Snapchat has caused.

In *Layshock v. Hermitage School Dist.*, 650 F.3d 205 (3rd Cir. 2011), the student was suspended because of an offensive online profile he made of a school employee. However, the student made the profile at his home, not at school, and used no school property in the process. The Court held:

> It would be an unseemly and dangerous precedent to allow the state, in the guise of school authorities, to reach into a child's home and control his/her actions there to the same extent that it can control that child when he/she participates in school sponsored activities. Allowing the District to punish Justin for conduct he engaged in while at his grandmother's house using his grandmother's computer would create just such a precedent, and we therefore conclude that the district court correctly ruled that the District's response to Justin's expressive conduct violated the First Amendment guarantee of free expression.

*Id*. at 216.

Rather than rushing to publicly condemn, humiliate, and punish these minor children for a private chat, the school could have simply called a meeting with the students and parents to discuss the issue, make sure the parents were aware, and

---

[1] Defendant Graden's letter was also posted publicly on the school's website.

KALLMAN LEGAL GROUP, PLLC

allowed the parents to implement any necessary discipline.

While it is a sad trend in today's culture for people to rush to publicly condemn anything they consider to be offensive or wrong in order to make themselves appear more virtuous, school officials should be held to a higher standard when it comes to minor children. It is their constitutional duty to educate children, not publicly denounce every bad word spoken by children in their own home or to publicly label those students as "racist."

Plaintiff children's speech was protected by the First Amendment, and they are likely to succeed at trial.

**B.**   **Defendants Lack the Authority to Punish Students for the Viewpoints Expressed in their Out-of-School Speech.**

Plaintiff children were punished because they privately said inappropriate and immature things—not because they disrupted school activities. "The Supreme Court has held time and time again, both within and outside of school context, that the mere fact that someone might take offense at the content of the speech is not a sufficient justification prohibiting it." *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 215 (3d Cir. 2001) (Citing *Tinker*, 393 U.S. at 509).

The Supreme Court has made clear that "a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint" is not a sufficient justification for punishing student speech. *Tinker*, 393 U.S. at 509; *J.S.*, 650 F.3d at 926.

13

Singling out certain viewpoints for censorship is almost invariably unconstitutional. See, e.g., *Pittsburgh League of Young Voters Educ. Fund v. Port Auth.*, 653 F.3d 290, 296 (3d Cir. 2011) (observing that "[v]iewpoint discrimination is anathema to free expression") (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992); *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

The Supreme Court held that a ban on offensive speech constitutes viewpoint discrimination because "[g]iving offense is a viewpoint," and striking down federal law that prohibited registration of trademarks that disparage any group of people. *Matal v. Tam*, 137 S. Ct. 1744, 1763 (June 19, 2017).

The First Amendment does not permit Defendants to punish Plaintiff children merely because school officials were offended by thoughts they expressed outside of school, on their own time. As the Court observed in *J.S.*, if the school's punishment is allowed to stand, "two students can be punished for using a vulgar remark to speak about their teacher at a private party, if another student overhears the remark, reports it to the school authorities, and the school authorities find the remark 'offensive.'" *J.S.*, 650 F.3d at 933.

Schools must tolerate off-campus, non-school related speech in order to provide adequate breathing room for valuable, robust speech—the kind that enriches the marketplace of ideas, promotes self-government, and contributes to self-determination. *J.S.*, 650 F.3d at 941 (Smith, J., concurring).

14

### C.    Defendants Lack Authority Under Michigan Law to Punish Students for Out-of-School Speech.

Defendants derive their authority to adopt and enforce school policies and a student code of conduct pursuant to MCL 380.11a. MCL 380.11a(3)(b) states that Defendants only have the authority to adopt and enforce policies and a student code of conduct that provides "for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity." Nothing in MCL 380.11a(3)(b) grants any authority to Defendants to punish speech or expression that does not occur "at school or a school sponsored activity or while en route to or from school or a school sponsored activity." Therefore, Defendants' improper expansion of their policy to include speech that does not occur "at school" is unlawful.

Defendants' Anti-Harassment Policy (po5517) states in the very first paragraph: "This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board." As none of the Snapchat occurred on school property or at any activity sponsored by the school board, the Anti-Harassment Policy did not provide Defendants with any authority to act in this case.

The Michigan Legislature enacted the Matt Epling Safe School Law (MCL 380.1310b) which is an anti-bullying law that codified the authority for schools to handle bullying situations. The statute requires that all school districts adopt anti-

15

bullying policies. The law clearly limited the authority of schools to regulate bullying as it only prohibited bullying "at school." MCL 380.1310b(1).

The statute defines "at school" to mean:

> in a classroom, elsewhere on school premises, on a school bus or other school-related vehicle, or at a school-sponsored activity or event whether or not it is held on school premises. 'At school' includes conduct using a telecommunications access device or telecommunications service provider that occurs off school premises if the telecommunications access device or the telecommunications service provider is owned by or under the control of the school district or public-school academy.

MCL 380.1310b(10)(a).

Defendants adopted an Anti-Bullying policy (po5517.01) as required by statute and the school denotes at the end of its policy that its authority to adopt such a policy derives from the Matt Epling Safe School Law. Despite the clear statutory limitation that the Matt Epling Safe School Law only applies to conduct "at school," the School District acted outside its authority and violated state law. Defendants unlawfully expanded their authority to include "[m]isconduct occurring outside of school may also be disciplined if it interferes with the school environment." See po5517.01. Nothing in the Matt Epling Safe School Law grants any authority to Defendants to police or punish speech or expression that does not occur "at school."

Finally, Defendants' own Student Code of Conduct clearly states that it only applies if students are: (1) traveling to and from school, (2) at school, (3) on school property, (4) at school sponsored events, and (5) on school transportation including

16

any off-campus events that may affect the school environment.

It is undisputed that the Snapchat occurred on a Sunday evening and did not happen while Plaintiff children were traveling to and from school, at school, on school property, at school sponsored events, or during any school off-campus events. Therefore, Defendants Student Code of Conduct cannot apply to the Snapchat that occurred, nor can it regulate the speech contained in the Snapchat.

**D.    Defendants' Policies and Procedures Are Unconstitutionally Vague and Overbroad and Give School Officials an Impermissible Amount of Discretion to Censor Student Speech.**

A restriction on speech violates the First Amendment if it is so vague that it does not allow a person of ordinary intelligence to determine what conduct it prohibits, or invites government officials to enforce it in an arbitrary and discriminatory way. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). A government policy restricting speech is unconstitutional when a public official's discretion is "not constrained by objective criteria" and instead gives the official room to make decisions based on "ambiguous and subjective reasons." *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998) (quoting *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996)).

A school regulation of student speech is overbroad when there is "a likelihood that the [regulation's] very existence will inhibit free expression" by "inhibiting the

speech of third parties who are not before the Court." *Saxe*, 240 F.3d at 214 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984)). A school rule regulating student speech may be struck down on its face for overbreadth if its prohibitions reach too much constitutionally protected expression, and the overbreadth is "substantial in relation to the [regulation's] plainly legitimate sweep." E.g., *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 258–59 (3d Cir. 2002) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).

Several portions of Defendants' policies contain vague prohibitions on speech that purport to give school officials broad power to censor student speech, without providing any objective criteria to cabin the officials' discretion.

The fact that numerous African-American and Caucasian students were using the same offensive language in the same private conversation, yet only the Caucasian students were disciplined is a perfect example of an "ambiguous and subjective" policy which was applied in a "discriminatory" way.

Defendants' Anti-Bullying policy (po5517.01) is facially void for vagueness and invalid because of its overbreadth. The policy states that "[m]isconduct occurring outside of school may also be disciplined if it interferes with the school environment." Yet, the policy provides no explanation or definition for what type or form of "misconduct" would be required in order for Defendants to invoke the policy. The policy provides no explanation or definition for the word "interferes"

18

and gives no indication as to what type or what level of interference is necessary to invoke the policy. There is no limiting principle as it could be applied to any student, at any location, for any thing, so long as the Defendants (in their sole discretion) deem the misconduct to "affect" the school environment.

Defendants' Suspension and Expulsion policy (po5610) is also facially void for vagueness and invalid because of its overbreadth. The policy states that a student may be suspended or expelled for engaging in "gross misconduct." The policy provides no definition for "gross misconduct" and does not indicate any limiting principle as to how it may be invoked. This leaves the students and parents to guess as to what may rise to the level of "gross misconduct." Such a vague and amorphous policy leads to illegal, arbitrary, and discriminatory enforcement beyond the authority of the school, just as has already occurred in this case.

These prohibitions reach broad swaths of protected speech, and would allow school officials to punish students for their off-campus speech whether the offending statement is an opinion that school officials disagree with, a challenge to school authority or criticism of the school, a parody about school officials that the officials do not find funny, or a true statement of fact that paints the school in an unflattering light. The First Amendment does not permit censorship pursuant to such vague, broad, and subjective standards. See *J.S.*, 650 F.3d at 933 (cautioning that upholding punishment of students for out-of-school speech that school officials find offensive

19

"would vest school officials with dangerously overbroad censorship discretion.").

Defendants' policies are vague and overbroad to the point that they are unconstitutional and were unconstitutionally applied in this case.

## II.   IN THE ABSENCE OF IMMEDIATE INJUNCTIVE RELIEF, PLAINTIFFS WILL SUFFER IRREPARABLE HARM.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373. Plaintiffs have been stripped of their state constitutional right to a public education as a result of Defendants' unconstitutional acts. Child A and B are barred from all extracurricular activities, sports, SAT preparation, and many other school functions on an ongoing basis as punishment for their protected self-expression. Further, Child B is a senior and was on the swimming/diving team. Regionals for his sport are on March 7, 2020. His coaches desire to have him back on the team; however, Defendants have unreasonably refused to permit him to resume his sporting activities.

Child C and D continue to be suspended and have not attended school for approximately one month as punishment for their self-expression. All Plaintiff children have suffered irreparable harm, but it will be further exacerbated for Child C and D if they are not permitted to rejoin their classmates at the beginning of the next trimester in the beginning of March. All Plaintiff children are suffering, and in the absence of the immediate injunctive relief requested, will continue to suffer

irreparable harm.

## III. DEFENDANTS WILL SUFFER NO IRREPARABLE HARM BY ALLOWING PLAINTIFFS TO BE FULLY REINSTATED AT SCHOOL.

The Court must balance the ongoing irreparable harm to Plaintiff children against any harm that Defendants would suffer from the requested injunctive relief. Defendants have no legitimate interest in suppressing these children's First Amendment rights. Further, Defendants have no legitimate interest in denying Plaintiff children their constitutionally protected public education. Defendants do not face any cognizable harm from allowing Plaintiff children to rejoin all school related activities.

In this case— as in many student speech cases—Defendants' side of the scale is empty. As our courts have often observed, "[e]veryday school discipline does not depend on the necessity of a speech code." *Sypniewski*, 307 F.3d at 259. This is all the more true with respect to attempts to regulate student expression and conduct off campus. Consequently, Defendants would suffer no harm if this Court granted the requested preliminary relief as they would merely be ordered to do what they already have a constitutional duty to do: educate children.

## IV. THE PUBLIC INTEREST FAVORS THE PROTECTION OF STUDENT SPEECH RIGHTS.

The Court must also weigh the effect on the public of enjoining Defendants' speech prohibitions and restoring Plaintiff children full participation in school. This

21

factor also supports Plaintiffs' request for an injunction. "[T]he public's interest favors the protection of constitutional rights in the absence of legitimate countervailing concerns." *B.H.*, 827 F. Supp. 2d at 409 (quoting *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997)). The parents of the children have exercised their parental authority over their children addressing their children's behavior. It is in the public interest for these minor children to attend school. Indeed, it is such a fundamental public interest that a free public education for children was enshrined in Article VIII, § 2 of Michigan's Constitution. Despite Plaintiffs' numerous attempts to convince Defendants to do the right thing and let these children return to school, Defendants have refused.

## CONCLUSION

All four factors for granting a Temporary Restraining Order and Preliminary Injunction weigh in Plaintiffs' favor. For all the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' motion and enter the accompanying proposed order.

Respectfully submitted,
**KALLMAN LEGAL GROUP, PLLC**

DATED: February 24, 2020

/s/ David A. Kallman
David A. Kallman          (P34200)
Attorney for Plaintiffs
5600 W. Mount Hope Hwy.
Lansing, MI 48917
517-322-3207
dave@kallmanlegal.com

22

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**

1.      This brief complies with the typeface requirements contained in Local Rule 5.1 because this brief has been prepared using Times New Roman size 14 font, double spaced, in Microsoft Word.

2.      In accordance with Local Rule 7.1, Plaintiff's counsel sought concurrence from Defendants' counsel. Defendants do not concur in the relief sought in Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

DATED: February 24, 2020              /s/ David A. Kallman
                                      David A. Kallman          (P34200)
                                      Attorney for Plaintiffs

KALLMAN LEGAL GROUP, PLLC

23